UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

PATRICK BALL,

                    Plaintiff,          **No. 6:17-cv-06312(MAT)**
                                        **DECISION AND ORDER**

          -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                    Defendant.
─────────────────────────────────

## I.   Introduction

     Patrick Ball ("Plaintiff"), represented by counsel, brings
this action pursuant to Titles II and XVI of the Social Security
Act ("the Act"), seeking review of the final decision of the Acting
Commissioner   of   Social   Security   ("Defendant"   or   "the
Commissioner"), denying his applications for Disability Insurance
Benefits ("DIB") and Supplemental Security Income ("SSI"). The
Court has jurisdiction over the matter pursuant to 42 U.S.C.
§§ 405(g), 1383(c).

## II.  Procedural Status

     On   November   26,   2013,   Plaintiff   protectively   filed
applications for DIB and SSI, alleging disability beginning
November 15, 2012. These claims were denied initially on
January 22, 2014. Plaintiff filed a written request for hearing on
January 30, 2014, which was held by Administrative Law Judge John
P. Costello ("the ALJ") on December 1, 2015, in Rochester,

New York. Plaintiff appeared with his attorney and testified, as did Julie A. Andrews, an impartial vocational expert ("the VE").

The ALJ considered Plaintiff's claims <u>de novo</u> and issued an unfavorable decision on January 16, 2016. (T.11-22).[1] Applying the five-step sequential evaluation, 20 C.F.R. §§ 404.1520(a), 416.920(a), the ALJ found that Plaintiff met the Act's insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since November 15, 2012, the alleged onset date. At step two, the ALJ found that Plaintiff had the "severe" impairments of status post-left elbow injury in 1999, cervical disc disease, and torn left shoulder labrum. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal any listed impairment, including Listing 1.02 (major dysfunction of a joint) and Listing 1.04 (disorders of the spine). The ALJ next assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he is able to do no more than frequent turning of the head from side to side, frequent extending and flexing of the neck, and lifting no greater than 10 pounds. At step four, the ALJ determined that Plaintiff was capable of performing his past relevant work as a machine operator. The ALJ proceeded to make an alternative step five finding that,

---

[1]
    Citations in parentheses to "T." refer to pages in the certified administrative transcript.

based on the VE's testimony, a hypothetical person of Plaintiff's age and with his work experience and RFC, could perform the representative jobs of Counter Clerk (Dictionary of Occupational Titles ("DOT") #249.366-010), an unskilled light exertion job, with 108,649 positions nationally; and Mail Clerk (DOT #204.687-026), an unskilled light exertion job, with 164,563 positions nationally.[2] Accordingly, the ALJ entered a finding of not disabled.

Plaintiff's request for review by the Appeals Council was denied on March 22, 2017, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely commenced this action.

## III. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g) (stating the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as

---

[2]
The VE also testified that, with an additional limitation to the full range of sedentary work, the same hypothetical person could work as an Order Clerk (DOT #209.567-014, unskilled, sedentary); or Label Pinker (DOT #585.685-062, unskilled, sedentary). (T. 87). If the hypothetical person could do no lifting or carrying with the left arm, and only occasional fingering and handling with his left hand, could only sit or stand for a maximum of two hours, and do no lifting with the right arm, they could not perform any work. (Id.). If a worker was off task 20% of the time in a day, they could not perform unskilled work. (Id.).

adequate to support a conclusion.'" <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." <u>Byam v. Barnhart</u>, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

## IV. Discussion

### A. RFC Unsupported by Substantial Evidence Due to Failure to Include Limitations on Reaching, Handling, or Fingering (Plaintiff's Point I)

Plaintiff contends that the ALJ, despite assigning significant weight to the opinion of consultative physician Dr. Aharon Wolf, did not adequately account for the limitations on "reaching, handling, and fingering" which he contends were contained in Dr. Wolf's opinion. Plaintiff contends that this was reversible error, because each job identified by the VE included at least occasional reaching, handling, or fingering. (<u>See</u> Dkt #11-1, p. 10 of 17).

"Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities." Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *7

-4-

(S.S.A. 1985). "Reaching" is extending the hands and arms in any directions; "handling" is seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands; and "fingering" involves picking, pinching, or otherwise working with the fingers. Id. SSR 85-15 states that reaching and handling are "activities required in almost all jobs." Id. Therefore, "[*s]ignificant* limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do." Id. (emphasis supplied). "Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." Id.

Under the Commissioner's rules, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL , at * (S.S.A. July 2, 1996).

On January 10, 2014, Dr. Wolf performed a consultative physical examination of Plaintiff. (T.334-37). Plaintiff described neck, left shoulder, and left elbow pain that he rated as 10 out of 10, as well as left arm and hand weakness with tingling and numbness. Dr. Wolf's clinical observations pertinent to Plaintiff's upper extremities were that Plaintiff had decreased cervical and left shoulder range of motion ("ROM") but  full ROM in his right shoulder. Plaintiff had reduced left arm strength, but no muscle atrophy or sensory deficits. He had normal hand and finger

dexterity bilaterally, and he had no problems with fastening buttons and zippers. For his medical source statement, Dr. Wolf opined that Plaintiff had "moderate" limitations in the following: lifting or repetitive activity with his left arm, grasping with his left hand, climbing, and looking overhead. (T.337).

As an initial matter, the Court notes that Dr. Wolf did not specifically refer to reaching, handling or fingering in his medical source statement. However, "grasping," which he did mention, is a sub-activity under "handling." SSR 85-15, 1985 WL 56857, at *7. Nevertheless, it is not apparent to the Court how Dr. Wolf's opinion contradicts the ALJ's RFC assessment. As noted above, Dr. Wolf assigned "moderate" limitations in grasping, but only on the left side. (T.337). Dr. Wolf did not assign any limitations on "reaching" or "fingering." SSR 85-15 notes that "[s]ignificant limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do[,]" 1985 WL 56857, at *7, but the Commissioner does not define "significant" in SSR 85-15 or elsewhere in the Regulations. Plaintiff has not come forward with any support for the proposition that "significant" as used by the Commissioner in SSR 85-15 is somehow equivalent to "moderate." Indeed, in common English usage, "significant" and "moderate" may be considered antonyms.[3] At the very least, their ordinary dictionary definitions make it clear

---

[3]     http://www.thesaurus.com/browse/moderate (last accessed Apr. 30, 2018).

that they are not used interchangeably. Therefore, the Court disagrees that Dr. Wolf's opinion facially conflicts with the ALJ's RFC assessment.

Nonetheless, SSR 85-15 does recognizes that "[v]arying degrees of limitations [in reaching, handling, and fingering] would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations." 1985 WL 56857, at *7. Here, the ALJ sought input from a VE, but only asked one question regarding fingering and handling. This was in connection with the second hypothetical involving an individual who was limited to sedentary work, with no lifting, only occasional fingering and handling with the left hand, and only sitting or standing for a maximum of 2 hours each in an 8-hour day. The VE testified that there was no work such a hypothetical individual could perform. (T.87). Plaintiff argues that the VE was not asked, and accordingly offered no opinion on, how an "occasional" limitation on fingering and handling (grasping) would erode his occupational base with the limitations of first hypothetical, which mirrored the ALJ's eventual RFC finding.

The Court notes that Dr. Wolf did not opine as to a limitation on fingering specifically. In fact, he observed that Plaintiff had normal hand and finger dexterity bilaterally and had no problems with fastening buttons and zippers, which provides evidences that Plaintiff's ability to finger was not impaired. Therefore, the

Court finds that the only relevant limitation that the ALJ arguably omitted from the first hypothetical is Dr. Wolf's "moderate" limitation on handling (grasping) with the left hand.

As Plaintiff notes, his past relevant work required at least frequent handling (grasping) or occasional fingering. See DOT, Inserting-Machine Operator, DICOT 208.685-018 (G.P.O.), 1991 WL 671755 (4th ed. 1991) (stating that this job involves "[h]andling: [f]requently - [e]xists from 1/3 to 2/3 of the time" and "[f]ingering: [o]ccasionally - [e]xists up to 1/3 of the time. . . "). Plaintiff argues that a "moderate" limitation on handling (grasping) could make it impossible for him to perform "frequent" handling, and the ALJ was required to obtain clarification from the VE by posing a variation of the first hypothetical that took into account Dr. Wolf's opinion that Plaintiff had a "moderate" limitation on left-hand handling (grasping). Assuming Plaintiff is correct, the Court finds that any error was harmless because, as discussed further below, the Commissioner presented other substantial evidence to meet her step-five burden.

The relevant question at step five is whether the claimant is capable of performing "*any* other work" that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g) (emphasis supplied). "Both the regulations and case law make clear, however, that it is the number of existing *job positions*, and not the number of occupations, that the AL[J] must consider in deciding

whether there is a significant number of jobs." <u>Rodriquez v. Astrue</u>, No. 11 CIV. 6977 PAC DF, 2013 WL 3753411, at *13 (S.D.N.Y. July 17, 2013) (citing 20 C.F.R. § 404.1566(b); other citations omitted; emphasis in original). As noted above, the VE testified to one job (Counter Clerk) that exists in significant numbers in the national economy and only requires occasional handling (and fingering). <u>See</u> DOT, Counter Clerk DICOT 249.366-010 (G.P.O.), 1991 WL 672323 (4th ed. 1991) (stating that this job involves "[h]andling: [o]ccasionally - [e]xists up to 1/3 of the time" and "[f]ingering: [o]ccasionally - [e]xists up to 1/3 of the time. . .")). Plaintiff does not suggest that "occasional" handling is incompatible with Dr. Wolf's opinion. Therefore, the Court finds that the Commissioner met her burden of showing that there is "any work" that exists in significant numbers in the national economy that Plaintiff can perform. <u>See</u>, <u>e.g.</u>, <u>Sullivan v. Astrue</u>, No. 08-CV-6355(CJS), 2009 WL 1347035, at *15 n. 15 (W.D.N.Y. May 13, 2009) ("Even if the VE had identified only one job that existed in sufficient numbers, the Commissioner would have met his burden at the fifth step."); <u>Henry v. Astrue</u>, No. 07 Civ. 0957(WCC), 2008 WL 5330523, at *10 (S.D.N.Y. Dec. 17, 2008) (noting that it is the number of actual positions, not types of jobs, that is relevant under step five); <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553 (2d Cir. 1983) (affirming step-five determination where ALJ only pointed to one type of job)).

Moreover, as the Commissioner notes, Dr. Wolf's examination took place prior to a course of physical therapy which resulted in significant improvement in Plaintiff's left shoulder. (T.19, 502-04). In addition, the ALJ's RFC finding is also consistent with other opinions from acceptable medical sources. On November 15, 2013, Christine Persuad, M.D., saw Plaintiff for left elbow pain that radiated to his left hand with numbness. (T.314-17). Plaintiff explained that these symptoms existed since his elbow surgery in the 1990s. Plaintiff exhibited slightly decreased left elbow ROM, but full ROM in his hands and full strength. A left elbow x-ray revealed only post-operative changes. (T.330, 350, 371). Dr. Persaud restricted him from heavy lifting, but did not impose any other restrictions. On November 26, 2013, Plaintiff began treating with Thomas Gregg, M.D. (T.310-11). Plaintiff demonstrated decreased ROM in his neck, along with tenderness in his neck and left shoulder harness. He had good strength, but the examination was limited by pain. Dr. Gregg opined that Plaintiff should avoid heavy lifting but did not impose other limitations. Subsequent left shoulder and clavicle x-rays showed only mild arthritic changes. (T.326, 328, 351-52, 378, 380). Plaintiff returned to Dr. Persaud on December 11, 2013, with a cervical strain; again, Dr. Persaud opined only that Plaintiff could not perform heavy lifting. (T.308).

On December 16, 2013, Dr. Gregg saw Plaintiff for neck and shoulder pain that he rated as "10 out of 10;" however, Dr. Gregg observed, Plaintiff did not appear in acute distress. (T.302-03). Dr. Gregg opined that Plaintiff's subjective pain complaints were "out of proportion" to his functional impairment. (T.303). Dr. Gregg indicated that Plaintiff could no longer lift over 50 pounds and opined that Plaintiff could not do work involving heavy lifting, pushing, and pulling; no other work restrictions were given. (T.303). On January 14, 2014, less than a week after Dr. Wolf's consultative examination, Plaintiff saw Dr. Gregg again. Plaintiff alleged "10 out of 10" pain, but he did not appear in acute distress. (T.405-07). Dr. Gregg noted that the MRI findings demonstrated "minimal pathology" and did not appear severe enough to cause Plaintiff's reported pain, which was "out of proportion" to his functional impairment. (T.406-07). Narcotic pain medications were not indicated in the absence of commensurate objective findings. According to Dr. Gregg, Plaintiff was functionally intact, except that he could no longer lift over 20 pounds; he could perform work that did not require heaving lifting. (T.406; <u>see also</u> T.413, 420, 430). Dr. Simon Arnsdell saw Plaintiff on March 26, 2014, for evaluation of his left shoulder pain. (T.463). Plaintiff appeared in no acute distress. He exhibited decreased left shoulder ROM but had full strength and intact sensations. Dr. Arnsdell felt that most of Plaintiff's pain was muscular or

myofascial, and that the labral tear was incidental and unrelated to the physical examination findings.

"While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions." Gecevic v. Sec'y of Health & Human Servs., 882 F. Supp. 278, 286 (E.D.N.Y. 1995) (quoting Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983)). The Court does not find evidence of such cherry-picking here.

## B. Error in Weighing Treating Source Opinions (Plaintiff's Point II)

Plaintiff contends that the ALJ erred by not giving controlling weight to opinions offered by primary care physician Dr. Anastasia Kolasa-Lenarz and Nurse Practitioner Lori Conway ("NP Conway").

A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Medically acceptable techniques include consideration of a patient's report

of complaints, or the patient's history, as essential diagnostic tools." Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003). "An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). These factors include (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

### 1. Dr. Kolasa-Lenarz's Opinion

On August 21, 2015, Plaintiff saw Dr. Kolasa-Lenarz, for left elbow, left shoulder, and neck pain. (T.438). He appeared in no acute distress and his motor and sensory examination was within normal limits, except for decreased left arm strength and decreased left elbow and left shoulder ROM. (T.440). Also on that date, Dr. Kolasa-Lenarz completed an employability assessment form for the Monroe County Department of Social Services ("DSS") indicating that Plaintiff could work 15 to 20 hours a week with no lifting, pushing, pulling, bending, or any strenuous or repetitive movements; could not stand for more than 1 to 2 hours; could only

walk for 2 to 4 hours; and could stand, sit, push/pull/bend, and lift for 1 to 2 hours each. (T.347).

On November 5, 2015, Dr. Kolasa-Lenarz provided a physical residual functional capacity questionnaire to Plaintiff's counsel stating that Plaintiff's signs and symptoms (pain and decreased ROM) related to his *left* shoulder and elbow while the clinical signs and objective findings (reduced ROM and pain) were in his *right* shoulder and elbow. (T.512). She did not conduct an examination on that day. Dr. Kolasa-Lenarz opined that Plaintiff could sit for 2 hours in an 8-hour workday; stand/walk for 2 hours in an 8-hour workday; could never lift any weight, turn his head left or right, look up, twist, stoop, climb ladders, or reach with his left arm; could occasionally hold his head in a static position; could handle, reach, and finger 100 percent of an 8-hour day with the right hand; could handle 50 percent of an 8-hour day (i.e., 4 hours) with the left hand, finger 50 percent of an 8-hour day (i.e., 4 hours) with the left hand, but could never reach with the left hand.[4] (T.515). Dr. Kolasa-Lenarz opined that Plaintiff's impairments would likely cause him to experience "good days" and

---

[4] "'Frequent' means occurring from one-third to two-thirds of the time." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983). If Plaintiff can handle and finger for 4 hours each, respectively, with his left hand, in an 8-hour day, then he can handle and finger frequently with his left hand in an 8-hour day.

"bad days" and that he would likely miss about three days of work per month because of his impairments.

On November 25, 2015, Dr. Kolasa-Lenarz provided another employability assessment form for DSS indicating that Plaintiff could work 20 hours a week and could lift 5 pounds but could do no bending, pushing, or pulling. (T.519). Dr. Kolasa-Lenarz did not conduct an examination that day. She again indicated that Plaintiff had very reduced *right* shoulder ROM. (T.521). Dr. Kolasa-Lenarz stated that Plaintiff could stand and walk for 2 to 4 hours, and sit and lift for 1 to 2 hours. (Id.).

The ALJ acknowledged Dr. Kolasa-Lenarz's treating relationship with Plaintiff but nevertheless accorded "limited weight" to her opinions because she is not an orthopedist and had "a very limited relationship" with Plaintiff. (T.18). As the ALJ pointed out, the first time she saw Plaintiff was on August 21, 2015, the date she issued her first opinion. Dr. Kolasa-Lenarz's lack of specialization and inability to provide a longitudinal view of Plaintiff's impairments and resultant limitations are proper considerations under the Regulations. As the Second Circuit has reiterated that "[w]hether the 'treating physician' rule is appropriately applied depends on 'the nature of the ongoing physician-treatment relationship.'" Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) (quotation omitted); see also Comins v. Astrue, 374 F. App'x 147, 149 (2d Cir. 2010) (unpublished opn.) (treating

physician who saw claimant once did not have ongoing treatment relationship so as to warrant presumption of deference).

The ALJ also found that Dr. Kolasa-Lenarz's opinions demonstrated "inconsistency with the exam findings and [Plaintiff]'s reports and statements." (T.18). See Portner v. Colvin, No. 615CV00343DNHTWD, 2016 WL 769975, at *5-*6 (N.D.N.Y. Jan. 29, 2016), R&R adopted, No. 615CV343DNHTWD, 2016 WL 796072 (N.D.N.Y. Feb. 22, 2016) (finding that the ALJ's assignment of "some weight" to treating physician's opinion was proper because the opinion was not consistent with physician's own treatment records, and the medical evidence overall).

In particular, the ALJ noted that a two-hour limit on Plaintiff's ability to sit, stand, and walk had "no support in the record." (T.18). For instance, at the time Dr. Kolasa-Lenarz provided this opinion Plaintiff was actually working more than 30 hours per week. (See T.46, 48-52, 224-27, 345). See Rivers v. Astrue, 280 F. App'x 20, 23 (2d Cir. 2008) (unpublished opn.) (stating that although claimant's work during the relevant period did not meet threshold for substantial gainful activity, he worked at levels consistent with light work).

In addition, the ALJ found, Dr. Kolasa-Lenarz's opinion that Plaintiff would not be able to lift and carry *any* appreciable amount of weight was in conflict with the record and her own examination findings that Plaintiff has had no right arm symptoms or pathology.

(T.18). The ALJ observed that "[e]ven [Plaintiff] stated that he could lift five pounds with his left arm without pain and twenty pounds with pain." (Id. (citing Ex. 6F, p. 51)).

The ALJ applied the proper regulatory factors in deciding not to accord Dr. Kolasa-Lenarz's opinions controlling weight, including the brevity of her treating relationship, and the inconsistency of her opinions with her clinical observations, the opinions of other acceptable medical sources, the unremarkable MRI evidence, and Plaintiff's own activities. This determination was supported by substantial evidence in the record.

### 2. NP Conway's Opinion

Nurse practitioners are not considered "acceptable medical sources" and, as such, cannot establish whether a claimant has a medically determinable impairment. 20 C.F.R. §§ 404.1513, 416.913; see also SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) (information from other sources cannot establish the existence of a medically determinable impairment). Evidence from other sources such as nurse practitioners may be used to demonstrate the severity of a claimant's impairment and how it affects his or her ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Although opinions from "other sources" are not entitled to the presumption of deference applicable to opinions from treating, "acceptable medical sources," they must be considered because the adjudicator is required to evaluate all evidence that comes before it. The factors

required for analysis of a treating physician's opinion can also be applied to opinion evidence from other sources. SSR 06-03p, 2006 WL 2329939, at *4.

Here, NP Conway saw Plaintiff on three occasions; at the third visit, NP Conway incorrectly stated that this was her *first* visit with Plaintiff. (T.432). The ALJ noted that NP Conway's January 2015 opinion was not consistent with her December 17, 2013 opinion. (T.18-19). In December 2013, NP Conway only precluded Plaintiff from performing work involving heavy lifting, pushing, pulling, or repetitive motions. (T.300). In January 2015, Plaintiff asserted that his pain was 10 out of 10 but did not appear in acute distress. (T.433-34). Clinically, he had a normal gait, decreased left elbow ROM, full wrist ROM, and full left-hand grasp strength; his right arm and hand displayed full ROM and strength. NP Conway indicated that Plaintiff could work 20 hours per week with no lifting, pushing, or pulling for the next 6 months, and could not sit longer than 2 hours, push/pull, or lift two-handed. (T.340). As the ALJ noted, the opinions are not inconsistent with each other, and the record does not reflect a worsening of Plaintiff's condition so as to account for the severe restrictions in the later opinion. Moreover, as the ALJ noted, the later opinion is inconsistent with NP Conway's findings on examination; for instance, she found nothing abnormal on Plaintiff's right upper extremity, yet she opined that he could not perform any lifting, pushing, or pulling. Likewise,

there is nothing in the record to support the 2-hour limitation on sitting. See Penfield v. Colvin, 563 F. App'x 839 (2d Cir. 2014) (ALJ properly gave little weight to treating source opinion that was inconsistent with a previous opinion from the same source). NP Conway's January 2015 opinion is also inconsistent with Plaintiff's subsequent part-time job from May to September 2015, at which he worked up to 37 hours per week. (T.213-29, 340, 435). The ALJ's weighing of NP Conway's opinion reflects the application of the proper factors, and the reasons given for discounting it are supported by substantial evidence and are not based on a mischaracterization or misquoting of the record.

## C. Erroneous Credibility Assessment (Plaintiff's Point II)

Within his Point II argument, Plaintiff also challenges the ALJ's finding that his complaints were less than fully credible because he "has not engaged in the type of treatment on would expect for a totally disabled individual." (T.19). Plaintiff notes that in the context of weighing treating physician opinions, the Second Circuit has reiterated that "[t]he ALJ and the judge may not 'impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered. . . ." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (quotation omitted; brackets and ellipsis in original). Courts in this Circuit have found similar statements to amount to the ALJ "playing doctor." See, e.g., Amarante v. Comm'r

of Soc. Sec., No. 16CV00717RJSBCM, 2017 WL 4326014, at *11 (S.D.N.Y. Sept. 8, 2017) (error for ALJ to opine that claimant had "not generally received the type of medical treatment one would expect for a totally disabled individual"), R&R adopted, No. 16-CV-717(RJS), 2017 WL 4326525 (S.D.N.Y. Sept. 26, 2017); Primes v. Colvin, No. 6:15-CV-06431(MAT), 2016 WL 446521, at *4 (W.D.N.Y. Feb. 5, 2016) (finding error with ALJ's statement that claimant "has not generally received the type of medical treatment one would expect from a totally disabled individual").

The Court agrees that, standing alone, the foregoing statement by the ALJ would be problematic. Whereas in Primes and Amarante, the ALJ identified no medical expert who opined that the claimant's medical treatment was atypical for a person who is disabled, here, treating physician Dr. Gregg opined on more than one occasion that Plaintiff's subjective complaints of pain at a 10 out of 10 at all times were "out of proportion" to his functional impairment. (T.303, 406). Dr. Gregg also found that the objective imaging results did not appear severe enough to cause Plaintiff's reported pain and were "disproportionate" to Plaintiff's complaints. (T.406-07). Dr. Gregg specifically noted that narcotic pain medications were not indicated due to the absence of commensurate objective findings. (T.407).

Moreover, the Commissioner's regulations and policy rulings indicate that the nature and type of treatment a claimant receives is a proper consideration in making a determination as to the

credibility of a his or her subjective complaints. See SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996) (instructing the ALJ to pay particular attention to certain factors in assessing credibility, including the type, dosage, effectiveness, and side effects of any medications; treatment modalities, other than medication, for relief of the claimant's pain or other symptoms; and any measures used to relieve pain or other symptoms) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). Here, that the ALJ properly found that Plaintiff had shown improvement with the conservative treatment he received, in the form of physical therapy. (T.19). See, e.g., Reices-Colon v. Astrue, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished opn.) (substantial evidence supported ALJ's finding that claimant showed improvement with treatment; treatment notes indicated that claimant's chest pains had improved, that medication seems to be helping, that her symptoms had shown some improvement, and that she was not crying as much, and consultative examiner concluded that claimant had a fair to good prognosis with continued treatment). In May 2014, Plaintiff was discharged from physical therapy with instructions to follow up with his doctor in two to three months if his pain did not resolve. (T.502-04). However, Plaintiff did not receive any medical treatment again until September 2014, when Dr. Gregg noted that Plaintiff had better pain control with physical therapy; he re-referred Plaintiff to physical therapy, but Plaintiff did not follow through on the

referral. (T.429-30). In January 2015, Plaintiff again was offered physical therapy but he did not attend. (T.505). In fact, Plaintiff returned to work between May 2015 and September 2015. (T.213-29). He did not seek medical consultation again until August 2015, in order to obtain a medical opinion regarding his work-related functional limitations. (T.441). As the Commissioner argues, this chronology suggests that Plaintiff's improvement with physical therapy was not temporary, and that the ALJ relied on substantial evidence in finding that he demonstrated improvement with a conservative course of treatment.

## V.    Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is free of harmful legal error and is supported by substantial evidence. Therefore, it is affirmed. Plaintiff's motion for judgment on the pleadings is denied and the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    May 2, 2018
          Rochester, New York.